O

# United States District Court
# Central District of California

| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JUAN L. CALDERON NONBERA,<br>   aka "Juan Calderon" and<br>   "Juan Louis Calderon,"<br><br>    Defendant. | Case № 2:19-cr-00725-ODW<br><br>**ORDER DENYING MOTION TO DISMISS [21]** |
|---|---|

## I.  INTRODUCTION

On or about August 4, 2019, Defendant Juan Calderon-Nonbera, an alien who has been officially deported and removed from the United States, was found in Los Angeles County after re-entering and remaining in the United States without permission. (Indictment 1, ECF No. 1.)  He was charged with violating 8 U.S.C. §§ 1326(a) & (b)(2), "Illegal Alien Found in the United States Following Deportation."  (*Id.*)  The Court granted Defendant's motion to dismiss the indictment but temporarily stayed the dismissal order.  (*See* Mot. to Dismiss ("Motion" or "Mot."), ECF No. 21.)  On the Government's motion, the Court now reconsiders Defendant's motion to dismiss.  Following further review, and for the reasons discussed below, the Court **DENIES** Defendant's Motion.

## II. BACKGROUND

Defendant is an alien who has previously been officially deported and removed from the United States on at least seven occasions: December 19, 2002; July 3, 2003; June 2, 2010; June 27, 2016; February 17, 2019; June 1, 2019; and July 15, 2019. (Indictment 1.)

### A. Initial Removal

In April 2002, Defendant was arrested by Los Angeles Police Department ("LAPD") officers and charged with drug possession, forgery, and driving without a license. (Opp'n Mot. Dismiss ("Opp'n") 7, ECF No. 30; Decl. of Lyndsi Allsop ("Allsop Decl.") Ex. B ("Rap Sheet") 0424–25, ECF No. 30-1, 30-2[1].) He pleaded guilty in June 2002 and was convicted on all counts. (Allsop Decl. Ex. H ("Conviction Rec.") 0443.) He was subsequently charged with being an Alien Present in the United States without Admission or Parole, served with a Notice to Appear, and ordered removed after removal proceedings conducted by an Immigration Judge, on December 19, 2002. (Allsop Decl. Ex. C ("June 2019 ICE Rec.") 0038.)

### B. Subsequent Removals

On an unknown date, Defendant reentered the United States without inspection. (*Id.*) On April 10, 2003, LAPD arrested him and charged him with felony possession of a controlled substance. (Rap Sheet 0425.) His probation from the felony forgery conviction was revoked and he was sentenced to sixteen months' imprisonment. (Conviction Rec. 0444–47.) While incarcerated, he was served with a Notice of Intent to Reinstate a Prior Removal Order (Form I-871), his 2002 removal order was reinstated, and he was removed from the United States on July 3, 2003. (June 2019 ICE Rec. 0038.) Defendant reentered the United States at an unknown time without inspection. (*See id.*) This pattern of unauthorized reentry, arrest, and removal has replayed at least five additional times.

---

[1] All exhibits to the Allsop Declaration are found in ECF No. 30-2.

- On November 25, 2007, LAPD arrested Defendant for felony grand theft. (*See* Rap Sheet.) While he was incarcerated, his 2002 removal order was reinstated and he was removed from the United States on June 2, 2010. (*See* Opp'n 11 (citing June 2019 ICE Rec.).)

- On March 3, 2011, LAPD arrested him for driving without a license. In June 2016, while he was incarcerated for another offense, his 2002 removal order was reinstated and he was removed from the United States on June 27, 2016. (*See id.* at 12 (citing Rap Sheet & June 2019 ICE Rec.).) He reentered the United States without inspection on or about January 2017. (*See id.* at 13 (citing June 2019 ICE Rec.).)

- On January 31, 2019, Culver City Police Department officers arrested Defendant for drug possession. (*See id.* (citing Rap Sheet).) On February 16, 2019, immigration authorities took him into custody following an LAPD traffic stop and arrest, his 2002 removal order was reinstated, and he was removed on February 17, 2019. (*See id.* at 13–14 (citing June 2019 ICE Rec.).) He reentered the United States later that same month without inspection. (*Id.*)

- On June 1, 2019, Alhambra Police Department officers arrested Defendant and charged him with drug offenses. (*See id.* at 14 (citing Rap Sheet).) Immigration authorities reinstated his 2002 removal and removed him from the United States on June 1, 2019. (*See id.* at 14 (citing June 2019 ICE Rec.).)

- On July 14, 2019, immigration authorities in San Bernardino arrested Defendant and charged him with Alien Present without Permission or Parole. (*See id.* at 15 (citing Rap Sheet).) His 2002 removal order was reinstated and he was again removed from the United States on July 14, 2019. (*See* Allsop Decl. Ex. A ("July 2019 ICE Rec.").)

**C. Indictment and Relevant Procedural History**

On or about August 4, 2019, Defendant was again found in Los Angeles County without inspection or permission, following an arrest for vehicle theft. (*See* Indictment.) On November 26, 2019, the Government filed a single-count indictment charging Defendant with violating 8 U.S.C. §§ 1326(a) & (b)(2),[2] "Illegal Alien Found in the United States Following Deportation." (*Id.*)

---

[2] All subsequent statutory citations refer to Title 8 of the United States Code, unless otherwise noted.

Defendant moved to dismiss the indictment on the basis of what he characterized as the holding in *Tomczyk v. Wilkinson*, 987 F.3d 815, *rehearing en banc granted and opinion vacated*, 2 F.4th 793 (9th Cir. July 6, 2021). (*See* Mot. 1.) He argued that *Tomczyk* held "[a]n inadmissible noncitizen who is not subject to an advance permission requirement . . . does not violate [8 U.S.C.] § 1326 by reentering the United States," and therefore he is not guilty of violating 8 U.S.C. § 1326 as a matter of law, pursuant to *Tomczyk*, "because he was not subject to [an] advance-permission requirement" under 8 U.S.C. § 1182(a)(9) at the time of his last reentry in 2019. (*Id.* at 3.) After hearing argument from the parties, the Court granted Defendant's Motion but stayed the dismissal order to permit the Government time to appeal. (ECF No. 40.) The Government moved for reconsideration. (Mot. Recons., ECF No. 44.) The Court granted the Government's motion and now reconsiders Defendant's motion to dismiss, in light of the parties' oral argument and extensive briefing.

Notably, after the Government filed its motion for reconsideration, the Ninth Circuit granted rehearing en banc in *Tomczyk* and vacated the opinion on which Defendant relied. *See Tomczyk v. Wilkinson*, 2 F.4th 793 (9th Cir. 2021). Defendant now characterizes the holding in *Tomczyk* as "unrelated" to the issues here; he argues *Tomczyk's* vacatur and rehearing do not impact his motion to dismiss because *Tomczyk* merely "helpfully" "rephrased" the plain statutory language of § 1326, which he contends still supports his position. (Opp'n Recons. 6–7, ECF No. 63.)

### III.    LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Courts may grant a pretrial motion to dismiss an indictment when it seeks to resolve questions of law, not fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a

cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

## IV.  DISCUSSION

Defendant argues he is not guilty of violating § 1326(a), "Illegal Alien Found in the United States Following Deportation," as a matter of law under § 1326(a)(2)(B), because he was not subject to an advance consent requirement under § 1182(a)(9). (*See* Mot. 3–4.)  Upon further review of the statutes' language and relevant authority, the Court finds Defendant's argument must fail.  First, the affirmative defense of § 1326(a)(2)(B) is not available to him because he is not "an alien previously denied admission and removed," as that statutory language has been interpreted and applied by the Ninth Circuit.  Second, even if he could invoke § 1326(a)(2)(B)'s affirmative defense, Defendant *was* subject to an advance consent requirement at the time of his latest reentry, both because § 1326 itself contains such a requirement and because reinstatement of his original 2002 removal order restarted the clock on the inadmissibility periods in § 1182(a)(9) on which Defendant relies.  Finally, as the Ninth Circuit has vacated *Tomczyk*, it provides Defendant no support.[3]

### A.   8 U.S.C. § 1326

Section 1326(a) subjects to criminal penalties:

[A]ny alien who--

**(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

**(2)** enters, attempts to enter, or is at any time found in, the United States, unless

> **(A)** prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or

---

[3] Even had the Ninth Circuit not vacated the *Tomczyk* opinion, the language on which Defendant relied as its "holding" was merely dicta, where the court discussed the "helpful guidance" provided by § 1326 in defining "illegal reentry," a term not at issue here. *See Tomczyk*, 987 F.3d at 823.

> **(B)** with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act . . . .

8 U.S.C. § 1326(a).

    *1.    Elements of Charge—§ 1326(a)*

Succinctly stated, § 1326 "provides criminal penalties for (1) any alien, who (2) has been removed from the United States, and (3) is later found in the United States without having first obtained the consent of the Attorney General to reapply for admission." *United States v. Zepeda-Gonzalez*, 611 F. App'x 394, 395 (9th Cir. 2015) (citing *United States v. Gondinez-Rabadan*, 289 F.3d 630, 632–33 (9th Cir. 2002)); *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1110 (9th Cir. 2000). The Indictment alleges, and Defendant does not dispute, that he is an alien previously deported and removed and thereafter found in the United States without having first obtained the Attorney General's consent. (Indictment 1.) Accordingly, the elements for imposition of criminal penalties are satisfied and the Indictment states an offense.

    *2.    Affirmative Defense—1326(a)(2)(B)*

Section 1326(a)(2)(B) provides an affirmative defense to an inadmissible noncitizen who was "previously denied admission and removed" and who "establish[es] that he was not required to obtain [the Attorney General's] advance consent." This subsection provides the basis for Defendant's motion to dismiss. (*See* Mot. 3.) He argues he was not subject to an advance consent requirement and therefore is not guilty of the charged offense as a matter of law. (*Id.*) However, under Ninth Circuit precedent, the plain language of subsection (B) applies to "alien[s] previously denied admission and removed," which does not include individuals like Defendant who were "arrested and deported."

The Ninth Circuit has held, "by its terms, the exception of § 1326(a)(2)(B) applies only to aliens who were "*excluded* and deported," i.e., denied admission and removed, not those who were "*arrested* and deported." *United States v.*

*Gutierrez-Alba*, 128 F.3d 1324, 1327–28 (9th Cir. 1997) (first emphasis added) (interpreting a substantially identical prior version of § 1326). "Prior to passage of the [Illegal Immigration Reform and Immigrant Responsibility Act], aliens coming to the United States seeking 'entry' were subject to 'exclusion' proceedings, whereas aliens already present in the United States were subject to 'deportation' proceedings." *Lezama-Garcia v. Holder*, 666 F.3d 518, 526 (9th Cir. 2011) (distinguishing individuals physically present in the country, "including those having entered illegally without inspection," from those seeking "entry"). "Entry" is now considered "admission" and "exclusion" is denial of admission. *See id.* at 527. Thus, the affirmative defense in § 1326(a)(2)(B) applies to aliens who sought admission and were denied, not to those who were found in the country, arrested, and removed. *See United States v. Peres-Peres*, 344 F. App'x 297, 298 (9th Cir. 2009) (affirming district court ruling precluding defendant from presenting § 1326(a)(2)(B) defense because evidence at trial showed unequivocally that defendant was "arrested and deported," rather than "denied admission and removed").

Under this authority, Defendant may not invoke the advance permission affirmative defense in § 1326(a)(2)(B) because he was found in the country, arrested, and removed, not "denied admission and removed," as the statute requires. *See Gutierrez-Alba*, 128 F.3d at 1327–28. Nevertheless, Defendant argues that, because "his removal order was based on a finding of inadmissibility," he must have been "denied admission and removed." (Mot. 5.) He provides no relevant authority for this proposition and cites only out-of-circuit cases for the undisputed principle that "grounds of inadmissibility" are bases on "which a non-citizen can be denied admission." (Opp'n Recons. 9 (quoting *New York v. DHS*, 969 F.3d 42, 51 (2d Cir. 2020)).) In short, Defendant provides nothing to overcome the authority above, under which he is not eligible for § 1326(a)(2)(B)'s affirmative defense as an inadmissible noncitizen who was arrested and removed.

Accordingly, Defendant may not rely on § 1326(a)(2)(B)'s affirmative defense.

### B. Advance Consent Requirement

Assuming Defendant could invoke § 1326(a)(2)(B), that section requires he establish "he was not required to obtain such advance consent," which he cannot do.

Defendant contends, without explanation, that § 1326(a)(2)(B)'s affirmative defense incorporates § 1182(a)(9), the so-called "inadmissibility codes," which create inadmissibility time-periods.[4] (*See* Mot. 5–12.) He argues that § 1182(a)(9) controls the circumstances of any advance consent requirement that applies to him here. (*See id.*) However, the Government persuasively argues that § 1326 bakes-in its own non-time-delimited advance consent requirement, making reference to § 1182 unnecessary. (*See* Mot. Recons. 1–3.)

The Ninth Circuit has stated § 1326 "makes reentry following deportation illegal if an alien returns *at any time* without the express permission of the Attorney General." *See Ramirez-Valencia*, 202 F.3d at 1108 (emphasis added). Section 1326 thus includes its own permanent consent requirement, independent of § 1182. Other Circuit Courts to have considered the interplay between § 1326 and § 1182 agree that "§ 1182 does not impose a limit on § 1326." *United States v. Romero-Caspeta*, 744 F.3d 405, 408 (6th Cir. 2014) (first discussing *United States v. Bernal-Gallegoa*, 726 F.2d 187 (5th Cir. 1984); and then discussing *United States v. Joya-Martinez*, 947 F.2d 1141, 1144 (4th Cir. 1991)). "[U]nder § 1326, a removed alien [i]s criminally liable if he did not have the express consent of the Attorney General *at any time* after his removal, *regardless* if [§ 1182's] exclusionary period had expired." *Id.* (emphasis added). Thus, "[c]ontrary to [the defendant's] argument, 8 U.S.C. § 1182(a)(9)(A) . . . *do[es] not eliminate the requirement* that a removed alien seeking

---

[4] For example, § 1182(a)(9)(A)(ii) provides:
> Any alien not described in clause (i) who (I) has been ordered removed under section 1229a of this title or any other provision of law, or (II) departed the United States while an order of removal was outstanding, and who seeks admission *within 10 years* of the date of such alien's departure or removal (or *within 20 years* of such date in the case of a second or subsequent removal *or at any time* in the case of an alien convicted of an aggravated felony) is inadmissible.

(Emphasis added.)

reentry must first seek the approval of the Attorney General before actually reentering." *Id.* (emphasis added).

Therefore, under § 1326 itself, a removed noncitizen must obtain Attorney General consent to reenter the United States *at any time*. As such, the Court need not consider § 1182's criteria for inadmissibility periods to find Defendant was subject to an advance consent requirement at the time of his latest 2019 reentry.

Finally, even under § 1182(a)(9), Defendant would have been subject to an advance consent requirement because each reinstatement of Defendant's original removal order would have restarted the consent period. The Ninth Circuit recently addressed a case with facts remarkably similar to this one, albeit in an unpublished opinion. In *Zepeda-Gonzalez*, the Ninth Circuit affirmed the defendant's conviction for illegal reentry in violation of § 1326. 611 F. App'x at 395. The defendant there had been removed three times, first under a 2000 removal order, then under a 2003 expedited removal order, and finally under a 2010 reinstatement of the original removal order. *Id.* When the defendant was again found in the United States in 2013 without permission, he was prosecuted and convicted for violating § 1326. *See id.*

Like Defendant here, the defendant in *Zepeda-Gonzalez* argued he was not required to obtain advance consent to reapply for admission for reentry in 2013 under § 1182(a)(9)(A). *Id.* at 396. The Ninth Circuit rejected this argument. It found, "[e]ven assuming that § 1326(a)(2)(B)'s affirmative defense to illegal reentry incorporates § 1182, Zepeda failed to establish the affirmative defense" because, after his third removal in 2010 pursuant to the reinstated removal order, "*the twenty year period began again.*" *Id.* at 396 (emphasis added). "To determine whether Zepeda was required to obtain the Attorney General's consent to reapply for admission . . . the relevant question is how many times prior to that reentry 'had [he] been *ordered removed*[?]' . . . *The answer is three times*." *Id.* (emphasis added). The court noted, "[i]n light of the numerous times Zepeda ha[d] been removed, establishing that he did

9

not need advance consent to reapply to enter the United States *was an impossibility*," regardless of the potential intersection of § 1326(a)(2)(B) and § 1182(a)(9). *Id.* at 397 n.2. (emphasis added).

There are three primary take-aways from *Zepeda-Gonzalez* relevant here: (1) the Ninth Circuit considers reinstatement of a removal order as "order[ing] [a defendant] removed" under § 1182; (2) a reinstated removal order thus restarts a § 1182 inadmissibility period; and (3) it would be impossible for a defendant who has been removed three times like Zepeda to establish he did not need advance consent. Applying *Zepeda-Gonzalez* to the facts before the Court, even assuming that § 1326 incorporates § 1182 (which has not been established), each time Defendant's 2002 removal order was reinstated, he was "ordered removed" for purposes of § 1182 and the inadmissibility period restarted. As his most recent removal before the current reentry was less than two months prior, there is no doubt that he would have required advance consent under § 1182(a)(9). Finally, Defendant has been removed *seven times*, four more than the Ninth Circuit found made it impossible for Zepeda to establish he was not subject to an advance consent requirement. This authority makes it clear that it would be equally impossible for Defendant.

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Dismiss. (ECF No. 21.)

**IT IS SO ORDERED.**

August 20, 2021

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**